IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| MICHAEL COATES, BRANDON RAYBION, and DANIEL VENABLE § § § Plaintiffs, § § v. § § TNT CRANE & RIGGING, INC., § § Defendant. § § | Civil Action No. 7:22-CV-0018-DC-RCG |

**PLAINTIFFS' TRIAL BRIEF
REGARDING PROPOSED JURY INSTRUCTIONS ON
DEFENDANT'S CREDIT/OFFSET DEFENSE**

Before the Court are Defendant TNT's Proposed Jury Instructions regarding its purported credit/offset defense (Dkt. 38-5, *17-18) and TNT's corresponding proposed verdict question. (Id. at *24 (Question 4 regarding unpaid overtime damages "less any amounts paid by Defendant TNT Crane & Rigging, Inc. to Plaintiff . . . for non compensable time").)

Also before the Court is Plaintiffs' Supplemental Proposed Jury Instruction regarding credits/offsets, which Plaintiffs request *only as an alternative to TNT's proposed instruction, in the event the Court decides to issue any instruction at all*. (Dkt. 54.) To be clear, *no instruction on TNT's purported offset defense should be given because, as a matter of law, the FLSA does not allow an offset for the types of payments at issue in this case.* The only categories of payments that the FLSA credits toward the required overtime pay are not present in this lawsuit. Therefore, if the jury were to apply an offset in this case, the instruction would be material and reversible error.

**Table of Contents**

I. No credit/offset instruction should be given because TNT did not make any payments eligible for credit. ................................................................................................................ 2

    A. The FLSA does not allow an offset when an employer treats noncompensable hours as hours worked and pays them at the employee's regular wage rate. ............................................ 3

        1. The FLSA only allows a credit for overtime premium payments, which TNT did not pay. ................................................................................................................................... 4

        2. The FLSA does not allow an offset for noncompensable hours included in the regular rate, which is what TNT paid. ........................................................................................... 5

        3. *Brubach* and *Barefield* are inapposite to this case. ....................................................... 7

    B. The FLSA does not allow a credit for "idle holiday pay," which an employer pays whether an employ works on the holiday or not. ........................................................................ 8

II. In the event the Court issues any instruction on credits, it should issue Plaintiff's proposed instructions rather than Defendant's. ............................................................................... 10

## I. No credit/offset instruction should be given because TNT did not make any payments eligible for credit.

"The FLSA explicitly states when an employer may use certain compensation already given to an employee as a credit against its overtime liability owed to that employee under the Act." *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 331-32 (3d Cir. 2016). "Offsetting with already-disbursed compensation against incurred overtime is discussed in section 207(h)." *Id.* Section 207(h) "explicitly permits offsetting against overtime only with certain compensation that is statutorily excluded from the regular rate, that is, only three categories of compensation, which are 'extra compensation provided by a premium rate'" enumerated in the FLSA at 29 U.S.C. § 207(e)(5)-(7). *Id.* at 332 (internal footnote omitted). "**No other types of remuneration for employment may be so credited.**" *Id.* (quoting 29 C.F.R. § 778.201(c)) (emphasis added).

This Court recently held that "whether the payments in this case fall under any of th[e] categories [enumerated at 29 U.S.C. § 207(e)(5)–(7)] has yet to be determined." (Dkt. 36, *4, Order

Denying Cross Motions for Partial Summary Judgment.) TNT has now specified in its Proposed Jury Instructions that it seeks an offset "for non-compensable time such as ticket time where the ticket exceeded the hours actually worked, rounding time in favor of the employee, and travel time that was legally non-compensable." (Dkt. 38-5, *17-18.) As a matter of law, those payments do not fall under any of the categories enumerated at 29 U.S.C. § 207(e)(5)–(7), and no credit for such payments is permitted.

TNT also seeks credit for " 'and-a-half' payments [it] made in paying time-and-a-half for work done on weekends and holidays even when the employee did not work overtime." (Dkt. 38-5, *18.) However, TNT's trial exhibits demonstrate conclusively that TNT never paid the Plaintiffs holiday or weekend pay at time-and-a-half or any other premium rate, which is a prerequisite for the applicable credit. *See* 29 U.S.C. § 207(e)(6). Instead, TNT provided only "idle holiday pay," which an employer pays whether an employ works on the holiday or not, and which the FLSA does not, under §§207(e)(5)-(7) and (h), allow to offset unpaid overtime.

### A. The FLSA does not allow an offset when an employer treats noncompensable hours as hours worked and pays them at the employee's regular wage rate.

As an initial matter, it is important to understand the context of the statutory provisions at issue. Section 207(e) of the FLSA is titled " 'Regular rate' defined," and it explains that the regular hourly rate used to calculate overtime pay includes all compensation, except for eight enumerated categories. 29 U.S.C. § 207(e). In other words, an employer must include *all* compensation in calculating the regular rate of pay *unless* such compensation is explicitly exempted by the statute.[1] Subsections (e)(5) through (e)(7) describe three different types of overtime premiums, including

---

[1] *See* 29 C.F.R. § 778.108. ("Section 7(e) of the Act requires inclusion in the 'regular rate' of 'all remuneration for employment paid to, or on behalf of, the employee' except payments specifically excluded by paragraphs (1) through (7) of that subsection.' "). Section 207(e) now includes eight categories of payments.

payment—but only if paid *at a premium rate*—for hours beyond an employee's normal schedule even when the FLSA does not require overtime pay, such as hours beyond eight per day, on weekends or holidays, or outside of the employee's normal schedule.[2]

> The statutory scheme that limits crediting to the three types of "extra compensation" excluded from the regular rate against overtime obligations makes sense. "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended."

*Smiley*, 839 F.3d at 334 (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948)). "Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(2).[3]

   1. *The FLSA only allows a credit for overtime premium payments, which TNT did not pay.*

Subsections (e)(5) through (e)(7) cover only overtime *premiums*, which section 207(h)

---

[2] *See* 29 C.F.R. § 778.201(a) ("Certain premium payments made by employers for work in excess of or outside of specified daily or weekly standard work periods or on certain special days are regarded as overtime premiums."); § 778.201(b) ("The three types of extra premium payments which may thus be treated as overtime premiums for purposes of the Act are outlined in section 7(e)(5), (6), and (7) of the Act . . . ."). "These overtime premiums are extra payments made by employers. These sums are excluded from the total salary (from which the regular hourly rate is calculated) so that they do not improperly inflate the hourly rate." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 827 (5th Cir. 2003).

[3] The regulations provide examples of overtime premiums that would qualify for a credit. 29 C.F.R. §§ 778.205, 778.206. The example provided in § 778.205 involves an employee whose regular hourly rate is $12 and whose employer has agreed to pay $18 per hour for work on a holiday or on Sunday. The employee works 8 hours every day of a particular workweek, including Sunday and a holiday on Tuesday, for a total of 56 hours. Absent the agreement regarding holiday or weekend premiums, the FLSA would require a total payment of $768 ($12 per hour for the first forty hours and $18 for hour for the 16 hours in excess of forty). Under the agreement, the employer similarly pays 40 hours at $12 and 16 hours at $18, albeit for a different reason—because 16 hours were on a Sunday or holiday. The weekend and holiday payments in this example meet the definition of weekend and holiday premiums in 29 U.S.C. § 207(e)(6) and therefore satisfy the FLSA's overtime requirement for that workweek.

credits toward the required overtime pay, as opposed to payment of the base, "straight-time" rate.[4] This makes sense because payment of the "straight-time" rate is already required and can never be credited toward an employer's overtime obligations.[5]

It is undisputed that TNT paid the noncompensable hours for which it now seeks credit *only* at the Plaintiffs' regular rates of pay, and *never* at a premium rate, as the statute requires if TNT wished to apply a credit. TNT treated the noncompensable hours like compensable hours and paid time-and-a-half only when the total weekly hours—including the otherwise noncompensable hours—exceeded forty. Time-and-a-half pay on the total hours over forty—even if they include noncompensable hours—does not constitute a premium rate on those noncompensable hours. After all, I FLSA already requires time-and-a-half overtime pay under those circumstances. *See* 29 C.F.R. 778.320(a) ("Where the parties have reasonably agreed to include [otherwise noncompensable time] as hours worked" the hours in excess of the statutory maximum must be paid at time-and-a-half.) In other words, the payments for which TNT seeks credit only cover what the FLSA requires in the first place *for the hours that have been paid*, and nothing is left over to credit toward the *unpaid legally compensable hours.* Allowing such payments to also offset *unpaid hours* would give the payments *double credit.*

2. *The FLSA does not allow an offset for noncompensable hours included in the regular rate, which is what TNT paid.*

TNT seeks a credit for payments of noncompensable time—i.e., non-working time or time for which the FLSA does not require compensation—that TNT agreed to pay voluntarily and that

---

[4] *See* §§ (e)(5) – (7) ("extra compensation provided by a premium rate"); § 778.201(b) ("The three types of extra premium payments which may thus be treated as overtime premiums for purposes of the Act are outlined in section 7(e)(5), (6), and (7) . . . .").

[5] *See* 29 C.F.R. § 778.315 (the required overtime pay "cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.").

are, by definition, included in the calculation of the regular rate. The FLSA does not allow such a credit.

The FLSA regulations specifically recognize that employers may agree to pay for hours that are not required to be compensated under the FLSA, such as time spent in "preliminary and postliminary activities and time spent in eating meals between working hours." 29 C.F.R. § 778.320. When that occurs, the parties have two options: (1) they can agree to treat the hours as hours worked for purposes of determining the number of weekly overtime hours that must be paid at time-and-a-half, § 778.320(a); or (2) they can agree to exclude the hours from hours worked, in which case the hours will not count toward overtime hours, nor will the compensation for those hours be included in the calculation of the regular rate. § 778.320(b).

Section 778.320(b) specifically observes that where the hours are excluded from hours worked, the "*payments for such hours cannot, of course, qualify as overtime premiums creditable toward overtime compensation under Section 7(h) of the Act [29 U.S.C. § 207(h)]*." *Id.* (emphasis added); After all, the statutory credit provisions are only for premium payments for "for certain hours *worked*." 29 U.S.C. §§ 207(e)(5) (emphasis added); *see also* (e)(6), (7) (payments "for work" on certain days or outside the normal schedule). The payments for which TNT claims a credit here are not for hours worked.

Therefore, TNT's only possible theory is that it treated the noncompensable hours as hours worked for purposes of counting them toward overtime. However, the "statute expressly . . . precludes offsetting by an employer . . . if the parties agree to treat paid non-work time as 'hours worked,' and this time is included in the regular rate of pay . . . ." *Smiley*, 839 F.3d at 334. That is because "the statute only provides for an offset of an employer's overtime liability using other compensation *excluded from the regular rate* pursuant to sections 207(e)(5)–(7) and paid to an

employee at a premium rate." *Id.* at 332 (emphasis added). When the parties treat noncompensable hours as hours worked, that time is, by definition, "included in the regular rate of pay unless it qualifies for exclusion from the regular rate . . . under section 7(e)(2)." 29 C.F.R. § 778.223.[6]

As the Ninth Circuit has explained, "it would undermine the purpose of the FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation required by the FLSA." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 914 (9th Cir. 2004). "Crediting money already due an employee for some other reason against the wage he is owed is not paying that employee the compensation to which he is entitled by statute. It is, instead, false and deceptive 'creative' bookkeeping that, if tolerated, would frustrate the goals and purposes of the FLSA." Similarly, TNT is attempting to avoid its FLSA obligations here by attempting to claim a credit for payments that were already due for another reason, and which, as a matter of law, do not entitle it to claim that credit.

### 3. Brubach *and* Barefield *are inapposite to this case.*

TNT misconstrues the authority on which it relies for its proposed instruction. (See Dkt 38-5, *18 n. 22 (citing *Brubach v. City of Albuquerque*, 893 F.Supp.2d 1216, 1232 (D.N.M. 2012); *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996)).) Neither case holds that *payment* for time beyond the FLSA's minimum requirements can be credited to offset an FLSA violation. Yet this is exactly the proposition for which TNT cites them. Rather, these cases merely recognize the uncontroversial proposition that, if the parties do not treat noncompensable time as hours worked, the time is not counted for purposes of determining whether the employee has exceeded the 40-hour overtime threshold.[7] *See Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1233 (D.N.M. 2012)

---

[6] Section 7(e)(2) covers payments for travel and out-of-pocket expenses and "vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause."

[7] *See* 29 C.F.R. 778.320(a) ("Where the parties have reasonably agreed to include [otherwise

("Defendant contends that because the City provided Plaintiffs with 30 minutes of paid, noncompensable time for lunch during each of Plaintiffs' five weekly eight-hour shifts, Plaintiffs never worked more than eight compensable hours in one day. Therefore, even if the five-minute early arrival was compensable, Plaintiffs never reached the FLSA's 40–hour overtime threshold in one week."); *Barefield v. Village of Winnetka*, 81 F.3d 704, 711 (7th Cir. 1996) (Plaintiffs did not exceed eight hours per day (and therefore did not exceed the overtime threshold) unless their noncompensable paid lunch and unpaid compensable roll call were both counted. "The FLSA prohibits an employer from failing to compensate for 'work' in excess of forty hours per week. The meal periods were not 'work.' Therefore, plaintiffs fail to establish an FLSA violation.")

Indeed, while TNT fails to call the Court's attention to it, the Third Circuit in *Smiley* examined *Barefield* and rejected it as support for the very proposition for which TNT cites it:

> The courts in both *Barefield* and *Avery* presumed an offset was permissible and focused on the fact that the FLSA did not require employers to compensate employees for the bona fide meal break periods at issue. Notably, neither opinion addresses the most relevant provision in the FLSA on the issue of offsetting—29 U.S.C. 207(h).

839 F.3d at 335. *Smiley* concluded that "permitting DuPont to use pay given for straight time—and included in the regular rate of pay—as an offset against overtime pay is precisely the type of 'creative bookkeeping' that the Ninth Circuit [in *Ballaris*] cautioned against and the FLSA sought to eradicate." *Id.* at 334.

### B. The FLSA does not allow a credit for "idle holiday pay," which an employer pays whether an employ works on the holiday or not.

Section 207(h), by incorporating subsection (e)(6), allows a credit for "extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, [or] holidays . . . ." § 207(e)(6). TNT seeks a credit for "for 'and-a-half' payments [it] made in paying

---

noncompensable time] as hours worked" the hours in excess of the statutory maximum must be paid at time-and-a-half.)

time-and-a-half for work done on weekends and holidays even when the employee did not work overtime." (Dkt. 38-5, *18.) However, TNT's trial exhibits consisting of Plaintiffs' payroll summaries and timesheets reveal that TNT paid eight hours at the Plaintiffs' regular rates of pay—not at a premium rate—for each holiday, regardless of whether the Plaintiffs worked the holiday or not.[8]

"To qualify as an overtime premium under section 7(e)(6), the premium must be paid because work is performed on the days specified and not for some other reason which would not qualify the premium as an overtime premium under sections 7(e)(5), (6), or (7) of the Act." 29 C.F.R. § 778.203(d). The regulations specifically address "[s]ums payable whether employee works or not." 29 C.F.R. § 778.219(a). When an employee who is entitled to holiday pay or accrued vacation or sick leave on a particular day "forgoes the use of leave and instead receives a payment that is the approximate equivalent to the employees' normal earnings for a similar period of working time, and is in addition to the employee's normal compensation for hours worked, the sum allocable to the forgone leave may be excluded from the regular rate." *Id.* But, "[s]ince it is not compensation for work, pay for unused leave[9] may not be credited toward overtime compensation due under the Act." *Id.* The regulation provides the following example:

> An employee who is entitled under his employment contract to 8 hours' pay at his rate of $12 an hour for the Christmas holiday, forgoes his holiday and works 9 hours on that day. During the entire week, he works a total of 50 hours. He is paid under his contract $600 as straight-time compensation for 50 hours plus $96 as **idle holiday pay**. He is owed, under the statute, an additional $60 as overtime premium (additional half-time) for the 10 hours in excess of 40. His regular rate of $12 per hour has not been increased by virtue of the holiday pay but **no part of the $96 holiday pay may be credited toward statutory overtime compensation due**.

---

[8] None of TNT's records show that they were paid any premium rate or other additional payment for working weekends.

[9] The quoted sentence specifically discusses unused leave, but the regulation discusses idle holiday pay together with other types of leave because they are treated the same.

*Id.* at 778.219(a)(2) (emphasis added). "Th[is] example . . . should be distinguished from a situation in which an employee is entitled to idle holiday pay under the employment agreement only when he is actually idle on the holiday, and who, if he forgoes his holiday also, under his contract, forgoes his idle holiday pay." *Id.* at 778.219(b); *see also* 778.219(b)(1), (2) (providing examples of agreements for premium payments of time-and-a-half and double-time for hours an employee works on a holiday).

Page 1 of Exhibit A is Plaintiff Raybion's payroll summary for the week that included Christmas Day of 2018, and it shows 8 hours of holiday pay at Raybion's regular rate of $30, in addition to his 40 hours of work at his regular rate. Page 2 is Raybion's timesheet for that week, demonstrating that he did not work on Christmas Day.

Page 3 of Exhibit A is Plaintiff Coates's payroll summary for the week that included September 4, 2018—Labor Day. It shows that he was paid 8 hours of holiday pay at his regular rate of $27. Page 4 is Coates's timesheet for that week, demonstrating that he worked 9 hours on September 24, for which he was paid, in addition to the holiday pay.

These exhibits demonstrate that TNT paid idle holiday pay at the Plaintiffs' regular rates of pay regardless of whether they worked on the holiday or not. Therefore, the holiday pay at issue in this case does not the meet the definition of premium pay under 29 U.S.C. § 207(e)(6) and cannot be credited toward TNT's overtime liability.

**II.     In the event the Court issues any instruction on credits, it should issue Plaintiff's proposed instructions rather than Defendant's.**

If the Court finds that TNT offers sufficient evidence that it made any payments that qualify for a credit under 29 U.S.C. §§ 207(e)(5)-(7), then the Court's instructions should be limited to the relevant provisions of established law.

Plaintiffs' proposed instructions are drawn directly from the relevant statutory and

regulatory provisions—either verbatim or with modifications only for brevity's sake. (*See* Dkt. 54.) Defendant's proposed instructions, on the other hand, neither quote, paraphrase, nor conform to the relevant provisions. (*See* Dkt. 38-5, *17-18.) Instead, they simply instruct the jury that the types of payments TNT claims it made qualify for a credit, which leaves nothing for the jury to decide, and which is incorrect as a matter of law.

Additionally, in contrast to Defendant's proposed and legally erroneous instructions, Plaintiff's proposed instructions correctly limit any credit to the workweeks in which any qualifying payments were made. *See Singer*, 324 F.3d at 828 (citing 29 C.F.R. § 778.106 ("The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."); 324 F.3d at 827 (citing *Herman v. Fabri–Ctrs. of Am., Inc.,* 308 F.3d 580, 590 (6th Cir. 2002) ("[P]remium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid."); *Howard v. City of Springfield, Ill.,* 274 F.3d 1141, 1149 (7th Cir. 2001) (holding that "the district court erred in allowing the blanket application of all [§ 207] premium payments to all overtime liabilities"); *Nolan v. City of Chicago,* 125 F.Supp.2d 324, 331 (N.D. Ill. 2000) (finding that "offsets [under § 207(e)(5) and (6) ] should be calculated on a period by period basis"); *but see Kohlheim v. Glynn County, Ga.,* 915 F.2d 1473, 1481 (11th Cir. 1990) (stating that an employer should be permitted to offset "*all* previously paid overtime premiums . . . against overtime compensation found to be due") (emphasis in original).[10]

So, for example, if an employer pays a holiday premium of double-time for 10 hours worked on a holiday, and the employee's regular rate is $10 per hour, the total pay for the day is

---

[10] The Fifth Circuit in *Singer* did not reach any binding decision regarding section 207(h) because it found it inapplicable to the case. Instead, it found that the City of Waco prepaid overtime in one pay period to cover a shortfall in a subsequent pay period. *Id.* at 828.

$200. $100 of that amount is a holiday premium that is excluded from the regular rate and creditable toward the employer's overtime obligation *in that same workweek.* If, in the following workweek, the employer fails to pay for an hour of overtime, the credit in the first week cannot be applied to the unpaid overtime in the following week.

### III.     Conclusion

The Court should not give any instruction on TNT's purported credit/offset defense because, as a matter of law, the FLSA does not permit a credit for any of the categories of payments for which TNT seeks a credit. In the alternative, if the Court finds that any instruction should be given, Plaintiffs respectfully request that the Court use Plaintiffs' proposed instructions. (Dkt. 54.)

Respectfully submitted,

**FAIR LABOR LAW**


By:  */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Ph: (512) 277-3254

**MORELAND VERRETT, P.C.**
Edmond S. Moreland, Jr.
State Bar No. 24002644
edmond@morelandlaw.com
Daniel A. Verrett
State Bar No. 24075220
daniel@morelandlaw.com

700 West Summit Drive<br>
Wimberley, Texas 78676<br>
Ph: (512) 782-0567<br>
Fax: (512) 782-0605

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, I electronically submitted the foregoing document for filing using the Court's CM/ECF system, which will serve a true and correct copy of the foregoing document upon counsel of record.

*/s/ Aaron Johnson*
Aaron Johnson