**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MICHAEL COATES, BRANDON** | § | |
| **RAYBION, and DANIEL VENABLE** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No.** |
| **v.** | § | |
| | § | **7:22-CV-0018-DC-RCG** |
| **TNT CRANE & RIGGING, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES

### Table of Contents

I.    REASONABLE RATES ................................................................................ 1

   A.   TNT concedes that Plaintiffs' attorneys are entitled to their "home" rates. ........................ 1

   B.   Reasonableness is a range, not a point. ................................................................. 2

   C.   The Court should consider all of Plaintiffs' supporting declarations. ................................ 2

   D.   Apart from Plaintiffs' supporting declarations, numerous judicial findings and attorney declarations in other cases support Plaintiffs' requested rates. ........................................... 3

   E.   TNT does not dispute that the risk of loss in contingent-fee cases should be reflected in a higher hourly rate. ..................................................................................................... 5

   F.   TNT fails to rebut Plaintiffs' evidence of reasonable market rates with anything but the 2015 SBOT Hourly Fact Sheet, which has been discredited by a growing number of courts. .... 5

II.   HOURS REASONABLY EXPENDED ........................................................ 8

   A.   Alleged Vagueness ........................................................................................ 10

   B.   Alleged Block-Billing .................................................................................... 11

   C.   Alleged Clerical or Administrative Work, Travel Time ...................................... 13

   D.   Unsuccessful Claims and Arguments .............................................................. 14

   E.   Requests for Extensions ................................................................................. 16

   F.   Work Related to Other Matters ....................................................................... 16

   G.   Alleged Excessive or Duplicative Billing ........................................................ 17

III.  DEFENDANT'S REQUESTED REDUCTION ............................................ 19

IV.   NONTAXABLE EXPENSES ...................................................................... 20

I.       REASONABLE RATES

TNT argues that Plaintiffs "have not carried their burden of showing their high requested hourly rates . . . are supported and reasonable." (Dkt. 93, *9.) However, Plaintiffs have offered ample evidence, including the rates Mr. Johnson and other employment lawyers actually charge fee-paying clients and citations to numerous fee awards.

A.       TNT concedes that Plaintiffs' attorneys are entitled to their "home" rates.

TNT initially argues that the Court should consider rates at the city level, (Dkt. 93, *7-8,) despite the "plethora of more recent case law on this issue" holding that the relevant community is the judicial district—i.e., the Western District of Texas, in this case—not the division or city in which the court is located. (Dkt. 90, *6 (quoting *Valdepena v. Nuestro Sagardo Corazon Primary Home Care, Inc.*, 5:19-CV-94, 2022 WL 12399309, at *2 n. 3 (S.D. Tex. Sept. 15, 2022)).)

TNT also argues that Plaintiffs cite "only the lone declaration of [Holly] Williams—which even if it is not stricken under TNT's Motion to Strike, says nothing about other attorneys local to the Western District." (Dkt. 93, *8.) First, TNT did not move to strike Ms. Williams' declaration. (*See* Dkt. 92.) Second, Plaintiffs are not required to show that no other attorney in the entire Western District was available and might have charged a lower rate. Rather, even if the relevant community were limited to Midland/Odessa, Plaintiffs' counsel's home rates should apply because no Midland/Odessa lawyers were willing and able to handle this matter. (*See* Dkt. 90, *7.) "Where, as here, abundant and uncontradicted evidence prove[s] the necessity of . . . turning to out-of-district counsel, the co-counsel's 'home' rates should be considered as a starting point for calculating the lodestar amount." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). Far from contradicting Ms. Williams' testimony, TNT, in its own words, "concedes that Plaintiffs' counsel was uniquely situated to bring their experience and knowledge to provide efficient services

in this action." (Dkt. 93, *8.)

**B.      Reasonableness is a range, not a point.**

TNT requests that the Court deny Plaintiffs' counsel's requested rates and find hourly rates of $300 and $350 reasonable, respectively, for Plaintiffs' attorneys. But the Court's role is not to decide what it considers the *most reasonable* rates, nor to limit counsel to an alleged median rate. Rather, the standard is whether the requested rates are "within the range of prevailing rates in the community." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995); *see also Cruson v. Jackson Natl. Life Ins. Co.*, 4:16-CV-912-ALM, 2021 WL 3702483, at *3 (E.D. Tex. June 4, 2021) ("though [counsel's] respective average rates of $951.22 and $823.94 are high, they are within the range of prevailing market rates for similar lawyers for similar services"). "If, from the range of market rates invariably submitted by the parties, the court chooses an hourly rate different from the attorney's customary billing rate, it must articulate its reasons for doing so." *Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989).

**C.      The Court should consider all of Plaintiffs' supporting declarations.**

Plaintiffs incorporate by reference their Response, (Dkt. 97), to TNT's Motion to Strike the declarations of David Wiley, David Weiser, Colin Walsh, and Austin Kaplan, and the report of Professor N. Shirlene Pearson. (Dkt. 92.) The Court should deny TNT's Motion for the reasons set forth in Plaintiffs' Response. However, even if the Court were to grant TNT's Motion to Strike, it does not affect the declarations of Plaintiffs' counsel, Aaron Johnson and Edmond Moreland. "Although affidavits of attorneys who did not bill on the matter are 'generally' used to establish the reasonable hourly rate, this is not a requirement." *Solferini as Tr. of Corradi S.p.A. v. Corradi USA, Inc.*, 4:18-CV-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (citing *Smith & Fuller, P.A.*, 685 F.3d at 491 (stating that "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate).

Mr. Johnson's undisputed testimony includes the fact that $575 is the hourly rate he actually charges to fee-paying clients. (Dkt. 90, *12.) Courts consider the rate an attorney charges to fee-paying clients to be "powerful, and perhaps the best, evidence of his market rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000). (*See also* Dkt. 90, 12-13 (citing additional cases).)

> **D.    Apart from Plaintiffs' supporting declarations, numerous judicial findings and attorney declarations in other cases support Plaintiffs' requested rates.**

In addition to the detailed testimony by Mr. Moreland and Mr. Johnson and the declarations by four other attorneys regarding the rates that they and other attorneys actually charge in the Western District of Texas for similar employment litigation, Plaintiffs have also cited numerous fee awards by other courts, as well as numerous declarations by other Texas employment attorneys regarding the rates they charge. (Dkt. 90, *13-18; 90-10, Ex. D-1, 2022 "Yearbook.") Those fee awards and declarations establish market rates comparable to or higher than those requested by Plaintiffs for attorneys of similar skill, expertise, and experience. (*Id.*)[1]

TNT claims that Plaintiffs' "evidence regarding rates comes primarily from the commissioned work of an admittedly plaintiff-friendly organization . . . ." (Dkt. 93, *9.) TNT cites *Tovar v. S.W. Bell Tel., L.P.* for its comment considering the Yearbook not "persuasive." 3:20-CV-1455-B, 2022 WL 2306926, at *3 (N.D. Tex. June 27, 2022). However, the Yearbook is not an *opinion* or *argument* about rates, nor is it a summary of an anonymized survey with documented methodological flaws like the State Bar's Hourly Fact Sheet. Rather, the Yearbook compiles information about rates *actually charged by or awarded* to employment lawyers around the state.

---

[1] TNT argues that Plaintiffs "have presented no evidence showing *how* an adjustment for inflation was calculated." That is not true. Plaintiffs explained at Footnote 6 that they calculated inflation through 2023 using the Legal Services Inflation Calculator at https://www.officialdata.org/Legal-services/price-inflation.

As Mr. Wiley explains, "[i]t is like a giant string citation of authority." (Dkt. 90-9, *26.) So, "the critique that it is unpersuasive—without further explanation—is a critique that the authority cited within it is not persuasive, but without explanation as to why." *Id.*

TNT also argues that it "has found no courts relying on" the Yearbook. (Dkt. 93, *5.) However, that is probably because the Yearbook is so new. Nevertheless, David Wiley testifies that "a predecessor of the 'Yearbook' format was a collection of rates that [he] assembled in a chart—many of the same cases, just a different presentation format" and that "[i]n 2020, a version of that predecessor chart was used in an FLSA case . . . ." (Dkt. 90-9 (citing *Meadows v. Latshaw Drilling Co.,* No. 3:15-cv-01173-N [Doc. 238-2] at pp. 10-26, PageID 7394-7410 (N.D. Tex. May 9, 2019)).) Judge Godbey cited that chart in finding that "Plaintiffs' evidence demonstrates that courts approved attorneys' rates ranging from $250 to $750 for 1 to 29 years of experience." 2020 WL 291582, at *3 (N.D. Tex. Jan. 21, 2020) (citing App. Supp. Mot. Att'ys' Fees and Costs Pursuant Fair Labor Standards Act, Ex. B-1 [238]). Additionally, Judge Truncale of the Eastern District recently relied on the Plaintiff's attorneys' "own affidavits and a booklet for the Eastern District of Texas with the prevailing rates in this area of practice." *Harmon v. Texas Dept. of Crim. Just.*, Case No. 1:20-cv-00460-MJT (E.D. Tex. March 28, 2023) (attached hereto as **Exhibit A**.) The only booklet the plaintiffs' attorneys had provided was the Yearbook. (*See* Docket Report in *Texas Dept. of Crim. Just.*, attached hereto as **Exhibit B** (Dkt. 80, Ex. 3 "TELA Yearbook").)

Finally, TNT attempts to distinguish some of the cases cited in Plaintiffs' Motion. For example, TNT argues that one of the fee awards was in Bankruptcy Court. (Dkt. 93, *10.) That is irrelevant; the court applied the same standard to determine the reasonable hourly rate for attorneys handling employment litigation. TNT argues that one rate is only $350 per hour, but fails to note that, accounting for inflation, that 2009 award is the equivalent of $509.89 today, which doesn't

even account for the attorney's increased skill and experience. (*See* Dkt. 90, *17.) TNT also argues that the *Garriott* "matter involved international law and an award of $28 Million in damages." (Dkt. 93, *10.) However, this matter had its own complex issues, and proportionality to underlying damages is not a proper consideration for determining the range of prevailing rates in the market.

### E.   TNT does not dispute that the risk of loss in contingent-fee cases should be reflected in a higher hourly rate.

As set out in Plaintiffs' Motion, the Supreme Court has held that an attorney's risk of loss in contingent-fee cases may be the product of "the difficulty of establishing [the] merits," which should be "reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." (Dkt. 90, *11 (quoting *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)).) TNT sidesteps the point by arguing there was little difficulty in prevailing on the merits in this matter because "Plaintiffs' counsel had already spent years litigating the same claims in Repass and therefore, little work was required to bring the case through trial." (Dkt. 93, *9.) However, Plaintiffs' attorneys' time records demonstrate that the present case alone required hundreds of hours of attorney time for reasons discussed below. TNT's argument also disingenuously suggests that Plaintiffs always were, and remain, certain to prevail. Of course, trial outcomes are never guaranteed, and TNT continues to challenge the jury's verdict in this matter. Meanwhile, Plaintiffs' attorneys still bear the burden of delay and the risk of nonpayment.

### F.   TNT fails to rebut Plaintiffs' evidence of reasonable market rates with anything but the 2015 SBOT Hourly Fact Sheet, which has been discredited by a growing number of courts.

"If the opposing party . . . urges that the fees be based on a rate lower than the prevailing attorney's usual charge, even though that amount is within the community-accepted range, that party should at least adduce some evidence to support its position that, under the circumstances,

the requested rate is not reasonable." *Islamic Ctr.*, 876 F.2d at 469.

TNT presents no testimonial evidence—no affidavit or declaration—from any lawyer attesting to the range of prevailing rates in the community. Mr. Jodon's declaration offers only the conclusory opinion that Plaintiffs' requested rates are too high, but it does not disclose either his own rates or the range of rates charged by other attorneys. (*See* Dkt. 93-1, *4-5.) In short, he does not render an opinion on reasonable rates at all. Instead, TNT urges the court to look no further than the 2015 Hourly Fact Sheet. TNT's argument fails entirely to engage with the fact that the State Bar itself disclaims the report's usefulness for ruling on fee motions: the "hourly rate information is no longer collected. Past hourly rate reports were not designed for nor intended to be used for setting appropriate attorney fees." (Dkt 90, *20 (quoting State Bar website).) *None* of the cases that TNT cites in support of using the report take account of the Bar's express disclaimer.[2]

TNT argues that "Plaintiffs' criticism of the State Bar's Fact Sheet is biased rhetoric . . . . primarily based on opinions commissioned by the Texas Employment Lawyers Association." (Dkt. 93, *4.) Not true. In addition to the State Bar's own disclaimer, Plaintiffs cited several recent cases in which federal district courts have criticized the Fact Sheet and documented its flaws. (*See* Dkt. 90, *18-21.) Courts instead place greater weight on evidence of rates actually charged by attorneys in the community on similar matters. *See Diocesan Migrant & Refugee Servs., Inc. v. United States Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM, 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021) ("After consideration of the significant limitations of the Fact Sheet, this court relies on the three attorney declarations supporting the Motion, which compellingly concur that the

---

[2] Regardless, Defendant does not even rely on the most recent SBOT survey set forth in "2019 Income and Hourly Rates." Available at https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54950. In that document, the SBOT again reiterates that "[t]he hourly rate information is not designed for nor intended to be used for setting appropriate attorney fees." *Id.*, *1.

requested rate is reasonable."); *Johnson v. Sw. Rsch. Inst.*, No. CV-5:15-297, 2019 WL 4003106, at *7 (W.D. Tex. Aug. 23, 2019), *appeal dismissed*, No. 19-50845, 2020 WL 1188100 (5th Cir. Jan. 14, 2020) ("Whatever probative value this survey has, it does not erode the evidence supporting the rates' reasonableness, particularly since other judges in this district have approved much higher hourly rates for less complicated cases.")

TNT argues that "[r]ecently, the Fifth Circuit confirmed that reliance on the Fact Sheet was appropriate . . . ." (Dkt. 93, *6 (citing *Alvarez v. McCarthy*, 20-50465, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022)).) TNT overstates *Alvarez*'s significance. In fact, the Fifth Circuit explicitly noted that it was "mindful of the Fact Sheet's probative limitations . . . ." *Id.* at *5. The Court held that those limitations "were for the district court, not us, to consider," and that "we cannot say that the district court clearly erred when it determined that the Fact Sheet was a useful 'baseline' for calculating a reasonable hourly rate." *Id.* Simply clearing the low threshold of clear error does not mean the Fact Sheet is *good* evidence, much less that it should be given greater weight than direct evidence of rates attorneys in the community charge for similar services.

To the extent the Court affords the Fact Sheet any weight, it serves only to establish a floor. After all, there is no other evidence in the record that any attorneys' standard rates are as low as those reported in the Fact Sheet. Indeed, the Fact Sheet itself does not identify any particular attorneys and does not disclose whether the reported rates are the respondents' standard rates or whether the rates were discounted for bulk work or any other reason.

TNT's counsel could have at least testified about their own rates that they have charged TNT to defend this matter (unsuccessfully), which would serve as meaningful evidence of the range of prevailing rates within the community. However, TNT has conspicuously declined to do so, presumably because they are comparable with, if not higher than, Plaintiffs' attorneys' rates.

But TNT does not dispute that its attorneys' law firm last year charged rates of $525 for a 2017 law school graduate and $860 for a partner for employment litigation in Texas. (*See* Dkt. 90, *13.)

Plaintiffs' requested rates fall squarely between those at the low end of the range of prevailing market rates, anchored by the Fact Sheet, and those at the high end of the range, anchored by the rates charged by TNT's own counsel's law firm and the several other examples cited in Plaintiffs' Motion. (*See* Dkt. 90, *13.)

## II.   HOURS REASONABLY EXPENDED

As an overarching criticism, TNT argues that "the material facts, discovery, and legal arguments had already been litigated for years in *Repass* and thus could have been handled with great efficiency." (Dkt. 93, *8-9.) However, TNT chose to over-litigate this case by, for example, (1) insisting on re-taking the Plaintiffs' depositions (all of which it had previously taken in the *Repass* litigation), (2) serving additional written discovery (even though the parties had agreed to use the written discovery from *Repass* in this case (see Dkt. 97, *2 n. 3), (3) filing a lengthy motion for partial summary judgment with 16 exhibits on issues on which this Court had previously found issues of fact, (4) filing a frivolous motion to avoid the imposition of liquidated damages, and (5) filing a motion to strike Plaintiffs' experts on attorney's fees.

The fairness of fee-shifting statutes is that they permit a defendant to be as vigorous and multifarious in its defense as it wishes and as it deems necessary to protect its interests. If a defendant believes that filing motions, serving unnecessary discovery, and the like will help grind a plaintiff down to settle, then that is fair-game, and it is free to use all measures at its disposal to gain the upper hand.  On the other hand, there is a risk in such a strategy and that is, if the defendant pushes the case to trial and loses, then it must compensate the plaintiff for the time and effort that they made the plaintiff put into the case.  *See Robinson v. Nexion Health at Terrell Inc.*, 3:12-CV-

3853-L-BK, 2017 WL 5891790, at *8 (N.D. Tex. Nov. 1, 2017), *report and recommendation adopted*, 3:12-CV-3853-L, 2017 WL 5714795 (N.D. Tex. Nov. 28, 2017) ("Defendant was entitled to zealously defend th[e] action and did so. However, the end result of that strategy was to increase the costs of this litigation. The Court takes into account such practices when determining the reasonableness of Plaintiff's counsel's time billed.") (citing *Schwarz v. Folloder*, 767 F.2d 125, 134 (5th Cir. 1985) ("Having wrongfully kicked the snow loose at the top, [Defendant] must bear the consequences of the avalanche at the bottom." (internal quotes and citation omitted)).

It is true that Plaintiffs were able to avoid additional time and fees by using some of the discovery and legal research and arguments developed in *Repass*. Indeed, Plaintiffs are seeking only $20,384.50 for their work through October 17, 2022, which covers the discovery period, including all work related to drafting and filing the Plaintiffs' Original and First Amended Complaints; the Rule 26(f) conference and report, proposed scheduling order, and initial pretrial/scheduling conference; additional written discovery requests and responses; three additional depositions of the Plaintiffs and the deposition of defense witness Thi Tran; settlement discussions; and numerous phone calls with clients, co-counsel, and opposing counsel. But the bulk of the work in this case came on the detailed motions for summary judgment and responsive briefs; preparation for and attending the pretrial conference and trial; and post-trial motions.

Nevertheless, Plaintiffs have reviewed TNT's objections to each individual time entry and agree to write off an additional 16.4 hours, reducing their total claim through the date of the initial fee petition to $261,407.75 in fees and $4,724.14 in nontaxable expenses. (*See* the Amended Time Reports of Plaintiffs' attorney Edmond Moreland (attached hereto as **Exhibit C**), paralegal Andy Barrett (**Exhibit D**), and attorney Aaron Johnson (**Exhibit E**).)

### A.   Alleged Vagueness

Plaintiffs' "counsel, of course, is not required to record in great detail how each minute of his time was expended," but rather need only "identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court must be "mindful that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Louisiana Power & Light*, 50 F.3d at 327; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). Context is key.[3] For example, "trial preparation" may be adequate for a reasonable number of hours right around the time of trial.[4]

TNT argues that more than $40,000 of Plaintiffs' proposed fees are associated with vague entries such as "text message with client Michael Coates." (Dkt. 93, *15.) This is misleading. TNT may have labeled $40,000 of Plaintiff's fees as "vague," most of which are not unreasonably

---

[3] *See Ne. Ohio Coalition for Homeless v. Husted*, 831 F.3d 686, 704 (6th Cir. 2016) ("[w]hen read in conjunction with the timeline of the litigation, the billing records support the district court's determination that the hours charged were reasonably expended"); *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985) ("The entries that the defendants single out, although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation."); *Heard v. District of Columbia*, 2006 WL 2568013, *14 (D.D.C. Sept. 5, 2006) ("billing records must be read in context, taking into account surrounding entries, the activities on a court's docket, and other clarifying entries, such as attorney affidavits").

[4] *See Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 812 (N.D. Tex. 2015) ("even the least descriptive entries …, such as 'prep for MSJ' and 'Pretrial Matters,' can be examined for their reasonableness based on the number of hours spent on such tasks, the more detailed entries surrounding them, and their dates of entry, which indicates the point in the proceedings in which the particular services were rendered"; "supposedly duplicative entries … relate to matters that counsel would understandably spend multiple days on"); *Mattenson v. Baxter Healthcare Corp.*, 2005 WL 1204616, at *5 (N.D. Ill. Feb. 11, 2005) ("The vast majority of entries to which Defendant objects identify 'preparation for trial' and/or 'trial' as the completed task; a further explanation is not required for these entries. Accordingly, Defendant's objections are overruled.").

vague. However, only $1,207.50 of Plaintiffs' counsel's fees are for text messages with clients that do not include a more detailed explanation of the subject matter discussed, which Plaintiffs have now written off. (*See* **Exs. C-E**.)

The remainder of items TNT labels as "vague" are not vague at all. For example, TNT labels the following entries in Mr. Johnson's time report as "vague":

| 2/1/2022 | Phone call | with client re Waiver/Consent to Multi-Client Rep; status of litigation; next steps |
| 4/7/2022 | Phone call | with co-counsel: planning for status conf; correspondence to clients re global settlement offer |

(Dkt. 93-1, *14.) These are reasonably detailed descriptions of the tasks and the subject matter. As another example, TNT labels the following entries in Mr. Moreland's time report as vague:

| 2/5/2023 | Conference with clients Re trial. |
| 2/6/2023 | Prepare for and attend jury trial: conferences with co-counsel and clients Re same. |

(Dkt. 93-1, *9.) While Plaintiffs' counsel did not provide needless detail or divulge confidential communications, it is clear from the context that counsel met with Plaintiffs to brief and prepare them for trial and to debrief from the events of the day at trial.

### B.   Alleged Block-Billing

TNT argues that "there are numerous entries with distinct tasks . . . listed in a single entry separated by a semicolon," (Dkt. 93, *15), and requests that the Court strike numerous entries that it labels as "block-billed." (Dkt. 93-1.) However, "the mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of block-billing." *Williams v. R.W. Cannon, Inc.*, 657 F.Supp.2d 1302 (S.D. Fla. 2009). "When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record." *Id.*

"Generally, it is incumbent upon a party objecting to claimed fees to identify, for example in the context of block billing, why the multiple tasks billed together do not appear interrelated or

why the entry lacks sufficient clarity and detail for the Court to evaluate each task's reasonableness." *Pigford v. Vilsack*, 146 F.Supp.3d 137 (D.D.C., 2015) (cleaned up). Courts overrule objections to alleged block-billing when the objecting party fails to carry its burden. *See, e.g., Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (rejecting defendant's argument "that counsel 'lumped' the time entries, grouping tasks performed into a single bill" where the district court "found the contemporaneous billing records specific enough to determine that the hours claimed were reasonable"); *Sw. Rsch. Inst.*, 2019 WL 4003106 at *6 ("Here, the Court could adequately ascertain each expenditure's reasonableness. That's true even for the entries grouping related tasks into a single entry.") (cleaned up); *Robinson v. Nexion Health at Terrell Inc.*, No. 3:12-CV-3853-L-BK, 2017 WL 5891790, at *3 (N.D. Tex. Nov. 1, 2017), *report and recommendation adopted*, No. 3:12-CV-3853-L, 2017 WL 5714795 (N.D. Tex. Nov. 28, 2017) ("Each of the entries in question is sufficiently specific when considered in context, and the block-billed entries still allow the Court to determine that the hours claimed are reasonable and compensable in full.").

The entries Defendants attack as improperly block-billed do not improperly bundle together unrelated tasks, but instead provide helpful detail about the subparts of a larger task or closely related tasks. For example, TNT labels the following entries in Mr. Moreland's time report as "block billing" and request that the Court disallow any recovery for the time at all:

| | |
|---|---|
| 2/1/2022 | Finalize complaint; email correspondence with Aaron Johnson re same. |
| 4/21/2022 | Telephone conference with Aaron Johnson Re status and strategy; draft interrogatory to TNT. |

(Dkt. 93-1, *7.) But the context is clear in each entry that the subtasks are related. In the first entry, Mr. Moreland drafted an email to his co-counsel about the Complaint he had just finished drafting. In the second entry, Mr. Moreland discusses strategy with his co-counsel, then drafts an

interrogatory based on that discussion. Like the rest of the entries TNT labels as "block billing," these are closely related tasks, and the descriptions do not prevent the Court from conducting the necessary review to determine whether the time spent was in the range of reasonableness.

### C.      Alleged Clerical or Administrative Work, Travel Time

TNT argues that Plaintiffs' attorneys' time reports include "purely administrative tasks such as filing documents with the Court" and "work that could have been performed at a lower billable rate." (Dkt. 93, *16.) Plaintiffs did not record most of their time spent filing documents in the first place. All remaining entries for filing documents, as well as several other entries TNT challenges as clerical, have now been written off. (*See* **Exs. C-E**.)

Regarding TNT's argument that some tasks might have been performed by another professional at a lower rate, "a court may not reduce a fee award based on speculation as to how other firms would have staffed the case or whether it would have been cheaper to delegate the work to other attorneys." *Vargas v. Howell*, 949 F.3d 1188, 1197 (9th Cir. 2020) (cleaned up); *see also Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 366 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir.), cert. denied, 472 U.S. 1021 (1985) ("the allocation of responsibility between partners, associates and paralegals with respect to most tasks is a function of many variables and . . . there is no uniform approach that applies in all instances.").

TNT labels all of Plaintiffs' attorneys' travel time as "admin" and requests that it not be compensated at all. (Dkt. 93-1, *9, 18-21.) However, TNT cites only one dated, out-of-circuit, district court opinion refusing to compensate attorney travel time altogether. (*See id.* (citing *Brown v. Unified School Dist. No. 501*, 878 F.Supp. 1430, 1437 (D. Kan. 1995)). "In the Fifth Circuit, courts 'typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time.'" *W., Webb, Allbritton*

& *Gentry, P.C. v. Dutta*, 3:05-CV-1152-P, 2005 WL 8158208, at \*2 (N.D. Tex. Dec. 19, 2005) (quoting *Tasch, Inc. v. Unified Staffing & Assocs., Inc.*, 2003 WL 23109790, at \*6 (E.D. La. Dec 30, 2003)) (collecting cases). Plaintiffs already discounted their rates by half for all travel time in their initial time reports. (*See* Dkt. 90-3, 90-6.)

The remaining entries that TNT has labeled "administrative" for which Plaintiffs still seek recovery are tasks that constitute traditional legal work. For example, TNT labels as "admin" Mr. Johnson's April 18, 2022, entry for drafting a Joint Motion to Appear Remotely and Proposed Order, and for correspondence with opposing counsel regarding the motion. (Dkt. 93-1, \*14.) However, drafting motions and conferring with opposing counsel are legal tasks traditionally performed by attorneys. As another example, TNT labels the following entry as "admin":

| 1/10/2023 | 1.1 | Phone call | with co-counsel EM: Status/strategy/planning for trial and pretrial conference, incl: detailed analysis of Order in Limine; planning direct and cross exams, order of witnesses; questions to ask at pretrial conference re jury selection, voir dire, technological logistics |
|---|---|---|---|

(Dkt. 93-1, \*17.)[5] Likewise, those tasks are all traditional legal work to prepare for trial.

### D.  Unsuccessful Claims and Arguments

TNT argues that time must be deducted from Plaintiffs' attorneys' lodestar "to account for positions they took in this case that were unsuccessful, including arguments asserted in their motion for summary judgment" and for "pursuing claims under New Mexico law." (Dkt. 93, \*16.) Plaintiffs have written off or reduced the handful of entries TNT challenges as pertaining particularly to their New Mexico claims. (*See* **Exs. C, E**.)[6]

---

[5] As with a number of other entries on TNT's chart, TNT omits most of the description Plaintiffs provided and includes only "technological logistics" as the description. (*Compare* Dkt. 90-6, \*8, *with* Dkt. 93-1, \*17.)

[6] TNT requests to cut some of Mr. Moreland's time entries by 50% for work responding to TNT's Motion for Partial Summary Judgment. (Dkt. 93-1, \*7) However, only about 15% of Plaintiffs'

With regard to *unsuccessful motions or arguments* related to successful claims—as opposed to work on *unsuccessful claims*—the guiding principle remains that "counsel for a prevailing party should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430 n. 4 (quoting Senate Report) (cleaned up); *see also Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262-63 (5th Cir. 2018) (Ho, J., concurring) ("The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded, even though it ultimately proved fruitless.") "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* at 435; *see also Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 433 (8th Cir. 2021) (district court abused discretion by eliminating time for plaintiff's "non-frivolous" summary judgment motions in FLSA case that were mooted by her acceptance of offer of judgment and left unresolved).

TNT requests to eliminate Mr. Johnson's time spent drafting Plaintiffs' Reply in Support of their Motion for Partial Summary Judgment, as well as his time spent participating in mediation with TNT. (Dkt. 93-1, *17.) Those tasks were both reasonable at the time, even though they ultimately proved unfruitful. Fee-paying clients would not be due a refund for such time. TNT presumably has paid its own attorneys for all of their time on their unsuccessful motions. Therefore, the time should be included in the lodestar.

---

Response Brief related exclusively to their New Mexico claims. Nevertheless, since TNT does not seek a reduction of all entries for work on that Response, Plaintiffs have made the requested 50% reductions.

### E.       Requests for Extensions

TNT argues that motions for extensions "were unnecessary and were solely for their own convenience." (Dkt. 93, *16.) However, TNT cites no authority for its argument. A shifted fee should mirror what attorneys charge their own clients, and it is reasonable for attorneys to charge clients for seeking extensions that better enable the attorneys to prepare a quality product by the extended deadline.

### F.       Work Related to Other Matters

TNT baselessly claims that "Plaintiffs' counsel plainly is attempting to recoup fees expended on the *Repass* litigation." (Dkt. 93, *16.) Plaintiffs are at a loss as to what TNT means. The entries in Plaintiffs' attorneys' time reports begin with drafting the Complaint in this action in January of 2022. None of the entries are for work on the *Repass* matter. A few entries include work reviewing discovery from *Repass*, but only for use in the present case. (*See* **Exs. C, E**.)

TNT also alleges that "Plaintiffs' counsel performed the work in this action in conjunction with other matters, for example in preparing the Rule 26(f) Report and Proposed Scheduling Orders" together with those for the related *Kramer* matter. (Dkt. 93, *17.) And, TNT argues, "the mediation was conducted on a global basis, with several other actions." (*Id.*) Plaintiffs have reduced the minimal time logged for preparing the Rule 26(f) Reports and Proposed Scheduling Orders and other similar entries. However, there is no basis to speculate that the mediation, which only lasted 2.8 hours, would have taken any less time if it had not been conducted on a global basis. *See Hensley*, 461 U.S. at 448 ("And even where two claims apparently share no 'common core of facts' or related legal concepts . . . the actual work performed by lawyers to develop the facts of both claims may be closely intertwined. . . . It is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time

required to pursue both claims rather than just one is likely to be small.").

      **G.**    **Alleged Excessive or Duplicative Billing**

TNT argues that "[s]everal entries are also clearly excessive," (Dkt. 93, *17), and TNT labels numerous entries as "excessive" or "duplicate" which it requests to reduce or eliminate. (Dkt. 93-1, *7-9, 14-21.) The Court should "not entertain conclusory assertions about how long [Defendant] thinks [Plaintiffs' attorneys] should have spent on certain tasks." *Sw. Rsch. Inst.*, 2019 WL 4003106 at *6. ("[D]efendant's objections fall under the category of 'nit-picking from the outside and in hindsight [which] provides no basis for disallowance' of fees." *Trustees of Chicago Plastering Inst. Pension Tr. v. Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *4 (N.D. Ill. Mar. 18, 2008) (citation omitted).

TNT cites as an example "the more than 14 hours ($7,219 fees) claimed by Mr. Moreland and Mr. Johnson for preparing an outline for Plaintiff Coates' direct examination alone." (Dkt. 93, *17.) However, since Plaintiffs bore the burden of proof, it was incumbent on their attorneys to thoroughly analyze each element of their claims, survey potential evidence, plan how to prove each element, and prepare for success at trial. *See JCW Investments, Inc. v. Novelty, Inc.*, 366 F. Supp. 2d 688, 690 (N.D. Ill. 2005) ("the fact remains that the burden of proof . . . and remedy was always on plaintiff," and the fact "[t]hat its lawyers spent more time than defendant's [in discharging that burden] can hardly be used to reduce the amount of fees owed to plaintiff"); *CBS Broad., Inc. v. Browning*, No. 06-22463-CIV, 2007 WL 2850527, at *4 (S.D. Fla. Sept. 21, 2007) ("[u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant"). Moreover, that outline formed the core of the outlines for the other two direct examinations of the Plaintiffs.

To the extent TNT suggests that multiple entries for a single task equates to excessive or

duplicative billing, "supposedly duplicative entries . . . relate to matters that counsel would understandably spend multiple days on." *Olibas*, 104 F. Supp. 3d at 812. If TNT's implication is that Mr. Johnson and Mr. Moreland duplicated tasks between them, that is not the case either. "Any entries appearing in the attached records showing that multiple professionals spent time working simultaneously on the same or related tasks reflects that the professionals divided the task into discrete subparts and split the subparts between them, or that task by its nature entailed more than one individual." (Dkt. 90-5, Dec. of A. Johnson, ¶ 6.) *See Nassar v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:08-CV-1337-B, 2010 WL 3000877, at *3 (N.D. Tex. July 27, 2010), *vacated and remanded on other grounds sub nom. Nassar v. Univ. of Texas Sw. Med. Ctr.*, 537 F. App'x 525 (5th Cir. 2013) ("Though Dr. Nassar was represented by two law firms, he requests fees only for the work of four attorneys. The Court observed the performance of the attorneys at trial and discerned a reasonable division of labor; billing records submitted by each firm reflect that division of labor and include a permissible amount of collaboration that does not appear on the Court's inspection to be redundant or excessive.") A few of the entries TNT requests to strike are for communications between co-counsel. However, consultation with colleagues "is highly appropriate, efficient, and is exactly what lawyers in firms of all sizes do to best serve their clients." *Delgado v. Mak*, No. 06C3757, 2009 WL 211862, at *3 (N.D. Ill. Jan. 29, 2009); *see also Bohen v. City of East Chicago*, 666 F.Supp. 154, 157 (N.D. Ind. 1987) ("[c]onsultation among lawyers insures that they do not overlook significant facts").

TNT also alleges that "Plaintiffs' counsel's time entries appear inaccurate, such as time spent allegedly considering a 'global settlement' before the Complaint was filed." (Dkt. 93, *17.) Plaintiffs do not know what TNT is talking about here, nor does Mr. Jodon's declaration, which TNT cites for support, shed any light on the allegation. (*See Id.* (citing TNT's Exhibit C, Dkt. 93-

1).) Again, none of the entries in Plaintiffs' attorneys' time reports predate the filing of their complaint. Any entries regarding settlement discussions are contemporaneous records that truly and accurately reflect the intermittent discussions that occurred throughout the case.

## III.   DEFENDANT'S REQUESTED REDUCTION

TNT requests a lodestar reduction based on what it characterizes as "limited success." (Dkt. 93, *18.) TNT's argument wholly ignores the authority discussed at length in Plaintiffs' Motion regarding degree of success as a consideration in adjusting the lodestar. (*See* Dkt. 90, *31-32.) Plaintiffs achieved great success in this matter, winning a jury verdict on liability, willfulness, and most of the damages they sought. A plaintiff "may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n. 11. The difference between the $62,852 that the jury awarded Plaintiffs and the $84,762 they sought is minimal, and TNT cites no authority holding that such a minor difference warrants a lodestar reduction.

Furthermore, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006); *accord Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Since the "total request already deducts time spent exclusively on [Plaintiffs'] unsuccessful claims, further reducing [the] recovery would be an abuse of discretion." *S.W. Research Inst.*, 2019 WL 4003106 at *7 (cleaned up).

Finally, TNT argues that "the fact that requested fees of $282,646 is more than double the total wages and liquidated damages awarded, $125,164, also warrants reduction." (Dkt. 93, *18.) However, as Plaintiffs discussed at length in their motion, "it would be an abuse of discretion for the district court to reduce [the plaintiff]'s attorney's fee award solely on the basis of the amount

of damages obtained." (Dkt. 90, *30 (quoting *Black*, 732 F.3d at 503).) After all, "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." (*Id.* (quoting *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011)).) Therefore, no reduction of the lodestar is warranted in this matter.

## IV.   NONTAXABLE EXPENSES

TNT asserts that "[c]osts not enumerated in [28 U.S.C.] § 1920 are not recoverable in an FLSA case." (Dkt. 93, *19). However, district courts are divided on this issue. *See Martinez v. Refinery Terminal Fire Co.*, 2:11-CV-00295, 2016 WL 4594945, at *15 (S.D. Tex. Sept. 2, 2016) ("The Court is mindful of the different ways district courts have addressed the issue of costs and expenses.") (collecting cases on each side).

This Court has held that the FLSA's fee-shifting provision includes, generally, "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Hobbs v. Petroplex Pipe and Constr., Inc.*, MO:17-CV-00030-DC, 2020 WL 11931112, at *3 (W.D. Tex. Oct. 6, 2020) (quoting *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)). This court "relie[d] on the Fifth Circuit's finding that out-of-pocket expenses for travel are recoverable under the ADEA . . . ." *Id.* (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003)). As this Court noted, *West* applies to FLSA cases because "the ADEA and the FLSA share a remedial scheme evinced by the ADEA's incorporation of the FLSA's enforcement and remedial provisions." *Id.*

TNT does not object that any of Plaintiffs' expenses are unreasonable. Therefore, the Court should include all of Plaintiffs' counsel's nontaxable expenses as part of the fee award.

Respectfully Submitted,

**FAIR LABOR LAW**

By: */s/ Aaron Johnson*
    Aaron Johnson
    State Bar No. 24056961
    ajohnson@fairlaborlaw.com
    314 E. Highland Mall Blvd, Ste. 401
    Austin, Texas 78752
    (512) 277-3505
    (512) 277-3254 (fax)

    **MORELAND VERRETT, P.C.**
    700 West Summit Drive
    Wimberley, Texas 78676
    (512) 782-0567
    (512) 782-0605 – telecopier
    Edmond S. Moreland, Jr.
    State Bar No. 24002644
    edmond@morelandlaw.com
    Daniel A. Verrett
    Texas State Bar No. 24075220
    daniel@morelandlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2023, I electronically filed the foregoing using the Court's CM/ECF system. All counsel of record shall be served with a true and correct copy of this document by operation of the Court's CM/ECF system.

    */s/ Aaron Johnson*
    Aaron Johnson