**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MICHAEL COATES, BRANDON RAYBION, DANIEL VENABLE,** *Plaintiffs*, | § § § § | |
| | § | **MO:22-CV-00018-DC** |
| **v.** | § § § | |
| **TNT CRANE & RIGGING, INC.,** *Defendant*. | § § § | |

## ORDER

Before the Court is Defendant TNT Crane & Rigging, Inc.'s Motion for Judgment as a Matter of Law. (Doc. 94). On February 8, 2023, after conducting a two-day jury trial, the jury returned a unanimous verdict finding that Defendant failed to pay Plaintiffs overtime wages as required by law. What's more, the jury found Defendant knew that its conduct was prohibited by law or showed reckless disregard as to that fact.

The Court entered final judgment based on the jury's verdict, which awarded:

- Plaintiff Michael Coates $9,630.28 in actual damages for unpaid overtime and $9,630.28 in liquidated damages;

- Plaintiff Brandon Raybion $29,770.06 in actual damages for unpaid overtime and $29,770.06 in liquidated damages; and

- Plaintiff Daniel Venable $23,452.04 in actual damages for unpaid overtime and $23,452.04 in liquidated damages.

On March 21, 2023, Defendant moved for Judgment as a Matter of Law, or in the alternative, a New Trial and Relief from Judgment. After giving the Parties extensions respond and reply, all briefing has been completed, and the issues are now ripe for adjudication.

**LEGAL STANDARD**

**I.     Judgment as a matter of law under Rule 50.**

Rule 50(a) of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law during a jury trial if the Court finds that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Likewise, Rule 50(b) allows that party to renew its motion for judgment as a matter of law after trial "no later than 28 days after the entry of judgment." Put simply, the Court's inquiry in both cases is whether the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion—one that contradicts the jury's verdict.[1]

**II.    Motion for a new trial under Rule 59 and relief from judgment under Rule 60.**

Rule 59(a) of the Federal Rules of Civil Procedure permits a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The reasons that a court might grant a new trial include but is not limited to: (1) if the verdict is against the weight of the evidence, (2) the trial was unfair, or (3) prejudicial error was committed in its course.[2]

Rule 60(b) of the Federal Rules of Civil Procedure states that a court may relieve a party the court's final judgment because of "mistake, inadvertence, surprise, excusable neglect," or "any other reason that justifies relief."

**DISCUSSION**

Before analyzing Defendant's motion, the Court notes two preliminary issues. First, the Parties agree that the jury erred when calculating Brandon Raybion's damages, incorrectly

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[2] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

2

adding $7,042.04 to the total.[3] Thus, the Court will enter an amended judgment reducing Raybion's unpaid overtime and liquidated damages awards by $7,042.04 respectively.

Second, Plaintiffs argue that Defendant has waived various arguments in its motion by not moving on those issues at trial. In *Thomas v. Hughes*, decided just last year, the Fifth Circuit reiterated that "to properly raise an issue in a Rule 50(b) motion, the movant must have already raised it in [its] Rule 50(a) motion during the trial."[4] And after reviewing the transcript of Defendant's Rule 50(a) motion during trial, three of the items Defendant raises now in its Rule 50(b) motion were not raised during its Rule 50(a) motion during trial. First, Defendant did not raise the *de minimis* argument. Second, Defendant did not move on the willfulness issue. Lastly, Defendant did not argue that the continuous workday doctrine should not be applied. Thus, the Court will not address those arguments because they have been waived.

I. **Defendant contends that Plaintiffs' stops for fuel and supplies and transporting riggers are not compensable as a matter of law.**

The Portal-to-Portal Act of 1947 exempts employers from compensating employees under the Fair Labor Standards Act ("FLSA") for an employee's time spent "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and "(2) activities which are preliminary to or postliminary to said principal activity or activities."[5] So generally, an employee's travel time is not compensable under the FLSA.

Defendant's main argument here is that Plaintiffs' stops for fuel and supplies and transporting riggers did not convert their non-compensable commute time into compensable work time because those stops should be considered non-compensable preliminary or

---

[3] This correction moots the issue of Raybion's travel time under the New Mexico Minimum Wage Act raised by Defendant.
[4] 27 F.4th 995, 1008 (5th Cir. 2022).
[5] 29 U.S.C. § 254(a).

postliminary activities.[6] The Court reads this argument as making two thrusts. First, Defendant argues that the Court should rule that stopping for fuel and supplies and transporting riggers is not compensable as a matter of law. Second, a reasonable jury could not have found that stopping for fuel and supplies and transporting riggers constitute compensable time based on the evidence.

### A. The difference between activities integral and indispensable to the principal activities and principal activities.

Defendant zeroes in on Plaintiffs' stops for fuel and supplies on the way to work sites because such stops were not an "integral and indispensable" part of Plaintiffs' "principal activities" as crane operators. But before determining whether an activity is "integral and indispensable" to a crane operator's principal activity, logically, the Court must first know what the crane operator's "principal activities" are.

Department of Labor ("DOL") regulations state that an employee's "principal activities" are those which they are "employed to perform."[7] The term "principal activities" also includes all activities that are an "integral" or "indispensable" part of the employee's principal activities.[8] Indeed, *any* activity will be considered a "principal activity" when it is "integral and indispensable" to the employee's principal activities.[9] And Defendant is correct that what is "integral and indispensable" is a question of law for the Court.[10] But what Defendant's argument overlooks is that the Court doesn't need to decide whether Plaintiffs' stops for fuel and supplies and transporting riggers were "integral and indispensable" if such activities were part of their

---

[6] Doc. 94 at 5.
[7] 29 C.F.R. § 790.8(a).
[8] § 790.8(b)–(c).
[9] *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) ("For the foregoing reasons, we hold that any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act.").
[10] Doc. 94 at 6 (quoting *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2022 WL 4545756, *10 (W.D. Tex. Sept. 28, 2022)).

"principal activities." Indeed, whether certain activities are "principal activities" is a question of fact for the jury.

What activities an employee was hired to perform is a factual question that comes up quite often under the FLSA. For example, in the employee exemption context, one of the three criteria for whether an employee is exempt as an administrative employee is whether their "primary duty is the performance of office or non-manual work . . ."[11] And for that criterion, the Fifth Circuit has held that it "require[s] a fact-finder to analyze the facts to determine the employee's primary duty."[12] In sum, even though "primary duty" versus "principal activities" are different parts of the FLSA, courts in the Fifth Circuit recognize that "how an employee spends his working time is a question of fact."[13]

And that was how the jury was instructed, and how the jury ultimately decided this case. The jury was instructed that under the FLSA, an employee is entitled to overtime compensation "for hours worked over 40 hours in a workweek."[14] The Court then instructed the jury that "'hours worked' includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business"—in other words, an employee's "principal activities."[15] Next, the Court used DOL regulations to define an employee's principal activities as "those that the employee is employed to perform, which includes all activities that are an integral and indispensable part of the principal activities."[16] So when finding Defendant liable for unpaid overtime, the jury found that Plaintiffs' stops for fuel and supplies and transporting riggers —the crux of this case—were part of Plaintiffs' compensable, "principal activities."

---

[11] *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting 29 C.F.R. § 541.200).
[12] *Id.*
[13] *Smith v. Ochsner Health Sys.*, 956 F.3d 681 (5th Cir. 2020) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).
[14] Doc. 81 at 15.
[15] *Id.*
[16] *Id.* at 16.

### B. The record contains a legally sufficient evidentiary basis for a reasonable jury to conclude as it did.

Defendant's argument thus hinges on whether there was sufficient evidence for a reasonable jury to conclude that the activities were part of Plaintiffs' principal activities. And like the Court did during trial, after considering the record in the light most favorable to the non-moving party, the Court finds that there is a "legally sufficient evidentiary basis for a reasonable jury to find as the jury did."[17] For example, Defendant's own job description for crane operators—which was admitted as Exhibit P-38—listed the job's "essential functions," which included "[f]uel and service assigned crane/truck every day at the end of the shift." What's more, Defendant's director of human resources at the time, Antoy Bell, testified to that as follows:

> Q. Fueling cranes is one of the crane operator's principal activities that they're hired to perform, is it not?
>
> A. Ensuring that the crane is fueled is one of the activities, yes.
>
> Q. Fueling the crane. Right?
>
> A. Ensuring that the fuel crane is fueled.
>
> Q. So they can fuel it themselves, or they could make sure that somebody else did it?
>
> A. Correct.[18]

That exhibit and testimony, along with other evidence in the record, forms a legally sufficient evidentiary basis for a reasonable jury to conclude stopping for fuel and supplies were part of Plaintiffs' principal activities. Likewise, the record reveals much testimony about picking up and transporting riggers as part of Plaintiffs' duties. Thus, the Court finds there to be a "legally sufficient evidentiary basis" for a reasonable jury to have found Defendant liable for unpaid overtime.

---

[17] *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039–40 (5th Cir. 2011) (cleaned up).
[18] Doc. 83 at 44.

**II.    Defendant argues that the Court confused the jury by admitting demonstrative exhibits P-3-A, P-3-B, and P-3-C.**

Defendant also argues that the Court made a "prejudicial error" by admitting exhibits P-3-A, P-3-B, and P-3-C.[19] What Defendant's argument omits, however, is that the Court admitted Exhibits P-3-A, P-3-B, and P-3-C as demonstrative exhibits and instructed the jury to treat them as such. On page five of the jury charge, under the heading "Demonstrative Evidence," the Court instructed the jury in full:

> Exhibits P-3-A, P-3-B, and P-3-C are illustrations. They are a party's description used to describe something involved in this trial. If your recollection of the evidence differs from the exhibits, rely on your recollection.[20]

And that's not to mention the jury instruction immediately following the above stated that "summaries are not evidence or proof of any facts. You should determine the facts from the evidence."[21]

The Fifth Circuit has stated that trial courts have "great discretion" when admitting demonstrative or illustrative evidence.[22] "Illustrative evidence has no probative force beyond that which is lent to it by the credibility of the witness whose testimony it is used to explain."[23] At trial, Plaintiffs testified about the demonstrative exhibits, calling them estimates and summaries of their testimony on the amounts of unpaid wages they were claiming. For example, Daniel Venable described Exhibit P-3-B as a summary of how he calculated "an estimate of [his] unpaid wages."[24] Defendant then had, and took, the opportunity to cross-examine each Plaintiff about

---

[19] Doc. 94 at 21.
[20] Doc. 81 at 12.
[21] *Id.*
[22] *Carson v. Polley*, 689 F.2d 562, 579 (5th Cir. 1982).
[23] *Id.*
[24] Doc. 82 at 113.

the contents of each demonstrative exhibit. Thus, the jury in this case—as the judge of Plaintiffs' credibility—is who determined the demonstrative exhibits' "probative force."

What's more, the jury had the raw information illustrated by the demonstrative exhibits—Plaintiffs' timesheets—which were admitted pretrial without objection as Exhibits P-4, P-5, and P-6. And the jury had those exhibits to compare against Plaintiff's testimony and the demonstrative summaries. In fact, the jury even submitted a note to the Court during its deliberations, asking for paper copies of Exhibits P-4, P-5, and P-6.[25] So in short, the Court used its "great discretion" to admit P-3-A, P-3-B, and P-3-C as demonstratives, instructing the jury to rely on their recollection of the evidence, exhibits, and testimony provided at trial. Plaintiffs then testified to, and were cross-examined on, their statements that Exhibits P-3-A, P-3-B, and P-3-C were "estimated summaries" of unpaid overtime wages. And the jury compared that testimony with Plaintiffs' timesheets. As a result, the Court finds that admitting Exhibits P-3-A, P-3-B, and P-3-C as demonstratives does not warrant a new trial or relief from the judgment.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Judgment as a Matter of Law, or in the alternative, a New Trial and Relief from Judgment be **DENIED**. (Doc. 94).

It is so **ORDERED**.

SIGNED this 12th day of May, 2023.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[25] Doc. 76 (sealed) (the jury was provided with the requested paper copies after conferring with the Parties).